677 So.2d 1160 (1996)
Ex parte AU HOTEL, LTD., an Alabama Limited Partnership, and Thelma Dixon, an individual.
(Re AU HOTEL, LTD., an Alabama Limited Partnership, and Thelma Dixon, an individual v. James E. MARTIN, etc., et al.).
1941428.
Supreme Court of Alabama.
March 8, 1996.
Rehearing Denied May 31, 1996.
*1161 Robert A. Huffaker and William H. Webster of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for Petitioners.
David R. Boyd and W. Joseph McCorkle, Jr., of Balch & Bingham, Montgomery; and Lee Armstrong, General Counsel, Auburn University, for Respondents.
COOK, Justice.
AU Hotel, Ltd., and Thelma Dixon petition this Court for a writ of mandamus directing the Covington County Circuit Court to vacate an order transferring this action to Lee County. We grant the petition.
This dispute arises out of a series of negotiations and resultant agreements regarding the construction and operation of a conference center and hotel on the campus of Auburn University. The facilities began operating in 1988. AU Hotel, Ltd., operates the hotel under a sublease agreement between it and the Industrial Development Board of the City of Auburn. Auburn University operates the conference center under a sublease agreement with AU Hotel. The latter agreement required Auburn University to "use its best efforts to publicize the availability of the services provided by the hotel" in connection with its "publicizing events to be conducted at the conference center."
On December 1, 1993, AU Hotel and one of its limited partners, Thelma Dixon, a resident of Covington County, sued Auburn University and its former president, James E. Martin, a resident of Morgan County. The complaint, which named Martin in both his official and individual capacities, sought damages from Auburn University for breach of contract, and from Auburn University and Martin for, among other things, fraud and civil conspiracy, based on representations allegedly made to Dixon by Martin in Covington County regarding, among other things, projections of hotel business income. The complaint also sought "rescission of the agreements entered into between the parties" and a judgment requiring Auburn University specifically to perform the agreement to "use its best efforts to publicize the availability of the services provided by the hotel."
On December 30, 1993, the defendants moved to transfer the action to Lee County, the situs of Auburn University's principal place of business, on the ground that (1) venue was "improper" in Covington County, and, alternatively, that (2) a transfer would facilitate "the convenience of parties and witnesses," Ala.Code 1975, § 6-3-21.1. The trial courton the ground that venue was improper in Covington Countygranted the defendants' motion. Indeed, the order was "[b]ased solely upon the decision of" this Court in Ex parte Neely, 653 So.2d 945 (Ala. 1995). That order is the subject of the mandamus petition before us.

I. Improper Venue
Contending that venue in Covington County was improper, Martin and Auburn University oppose the mandamus petition on both statutory and nonstatutory grounds. The argument based on statute relates to Ala.Code 1975, § 6-3-2(b)(1) (where real estate is the "subject matter"). The other argument is based on a rule set out by this Court. We shall address the arguments in that order.

A. Statutory Ground
Section 6-3-2(b)(1) provides: "In proceedings of an equitable nature against individuals: (1) [a]ll actions where real estate is the subject matter of the action, whether it is the exclusive subject matter of the action or not, must be commenced in the county where the same or a material portion thereof is situated." Martin and Auburn University insist that real estate, namely, the conference center and hotel, is the "subject matter of [this] action." Referring to the contractual history of the development of the hotel and citing the counts of the complaint seeking rescission or, in the alternative, specific performance of the lease, they contend that this action is "much more than simply transitory." Brief and Answer in Response to the Plaintiffs' Petition for Writ of Mandamus, at 16. Consequently, they argue, § 6-3-2(b)(1) requires the prosecution of this action in Lee Countythe situs of the conference center and hotel. We disagree with this premise and its conclusion.
*1162 "A `transitory' action is one [that] could have arisen anywhere." Ex parte City of Birmingham, 507 So.2d 471, 473 (Ala. 1987). By contrast, an action having real estate as its "subject matter" is an example of a "local action," that is, one that "could only have arisen in the particular locality where it did arise." Id. "[L]ocal actions `are in the nature of suits in rem ... which are to be prosecuted where the thing on which they are founded is situated.'" Reed v. City National Bank of Selma, 406 So.2d 906, 909 (Ala.1981). This Court stated in Reed:
"`The test as to whether an action is transitory or local is not, as a general proposition, the subject causing the injury, but the object suffering the injury, or, as the distinction is otherwise stated, it exists in the nature of the subject of the injury and not in the means used or the place at which the cause of action arises.'"
Id. at 906 (emphasis added).
"[F]or venue purposes an action on a lease is one in personam, not in rem, and is transitory and therefore may be brought in any county where other transitory actions could be brought." Ex parte Canady, 563 So.2d 1024, 1026 (Ala.1990). Moreover, "[c]ontract actions are generally considered transitory even where damage to real property is involved." Ex parte Teledyne Exploration, 436 So.2d 880, 882 (Ala.1983) (emphasis added).
A number of these principles are illustrated in Ex parte Diamond, 596 So.2d 423 (Ala.1992). In that case, a general partnership composed of Sam Diamond (a Jefferson County resident) and Jake and Owen Aronov "acquired a leasehold interest in a parcel of land located in Montgomery County." Id. at 424. "In order to finance improvements on the property, the partnership borrowed money from Central Bank of the South (`Central Bank'), executing a note, a leasehold mortgage, and a security agreement to Central Bank...." Id. Subsequently, the partners "executed to Central Bank a continuing guaranty jointly and severally guaranteeing all indebtedness of [the partnership] up to the sum of $563,285.04." Id. Eventually, the Aronovs purchased the note from Central Bank and sued Diamond in Montgomery County, alleging that he owed them "his proportionate share of the remaining principal and interest ... on the note." Id.
Diamond moved to transfer the action to Jefferson County, where he resided. The Aronovs objected to the transfer, contending that the real estate located in Montgomery County was the "subject matter of the action." Id. The trial court denied Diamond's motion; he petitioned this Court for a writ of mandamus directing the court to transfer the action to Jefferson County. Id.
In granting the petition, we explained:
"An allegation that `one of the parties owns real estate, or has substantial rights in real estate which are dependent upon the settlement of the controversy, is not enough to make real estate the "subject matter" of the suit.' Alabama Youth Services Board v. Ellis, 350 So.2d 405, 408 (Ala.1977). See also Wesson v. Wesson, 514 So.2d 947 (Ala. 1987) (`subject matter' was real estate where the nature of the complaint and relief sought involved the determination of the validity of a conveyance of land, which in turn determined title to the property); Clark v. Smith, 191 Ala. 166, 67 So. 1000 (1915) (complaint for partition must be filed in county where part of the land is located).
"In the present case, the complaint did not involve land; the relief sought was monetary compensation arising from a note executed by the partnership in which each partner was a one-third owner. The fact that the note was secured by a mortgage of real property does not turn the cause of action into one of which the `subject matter' is real estate. The complaint did not involve the determination of the validity of the leasehold interest or the validity of the mortgage of the Montgomery property, nor did it involve any determination of the validity of a conveyance of property or a question involving who owned legal or equitable title to property. There was also no count in the complaint seeking to foreclose the mortgage against Diamond.

*1163 "Therefore, the `subject matter' of the action is not real estate...."
596 So.2d at 425 (emphasis added).
Similarly, this case involves none of the concerns identified in Ex parte Diamond as involving real estate sufficiently to invoke § 6-3-2(b)(1). The complaint cannot be construed as alleging any injury to the real estate. Cf. Reed v. City National Bank of Selma, 406 So.2d 906 (Ala.1981). Indeed, the principles discussed above compel the conclusion that this action is in personam and not in rem. The real estate located in Lee County is not the "subject matter" of this action as contemplated by § 6-3-2(b)(1).

B. Nonstatutory Ground
Martin and Auburn University also oppose the mandamus petition on a nonstatutory rule, namely, that "suits involving public officials are properly maintained in the county of their official residence." Tri-State Corp. v. State, 272 Ala. 41, 46, 128 So.2d 505, 509 (1961). The rule was stated in Tri-State Corp., in which this Court cited decisions of other jurisdictions. See also Hardin v. Fullilove Excavating Co., 353 So.2d 779 (Ala. 1977); Alabama Youth Servs. Bd. v. Ellis, 350 So.2d 405 (Ala.1977) ("action against a state agency or a state official in his official capacity [is] to be brought in the county of official residence").
As the trial court noted, the rule was recently applied in Ex parte Neely, 653 So.2d 945 (Ala.1995). Because this case involves an action against Auburn University, a state institution "maintaining its principal place of business in Lee County," Ex parte Neely requires, the respondents contend, transfer of this action to Lee County. In other words, they insist that the trial court's order was correct as a matter of law.
The petitioners, however, contend that this case is controlled by Ala.R.Civ.P. 82(c), which provides:
"Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought. Whenever an action has been commenced in a proper county, additional claims and parties may be joined, pursuant to Rules 13, 14, 22, and 24, as ancillary thereto, without regard to whether that county would be a proper venue for an independent action on such claims or against such parties."
(Emphasis added.) This argument relies on the fact that the action is against Martin in his individual, as well as his official, capacity. The petitioners contend that venue for an action against Martin alleging fraud in his individual capacity would be proper in Covington County, the county in which, the complaint alleges, the wrongful acts occurred. See Ala.Code 1975, § 6-3-2(a)(3) (ex delicto actions against individuals may be brought in the county "in which the act or omission complained of may have ... occurred"). On the basis of the fraud claim against Martin in his individual capacity, the petitioners argue, Rule 82(c) authorizes an action in Covington County as to Martinin his official capacityand as to the state institution, notwithstanding the general rule regarding venue for actions against state officials and agencies. In other words, they contend that because an action against Martin in his individual capacity would be proper in Covington County, Rule 82(c) authorizes the joinder of Auburn University, for which venuein the absence of Rule 82(c)would be improper.
During oral argument, Martin and Auburn University cited Ala. Const. 1901, amend. 328, § 6.11, which provides in part: "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not ... affect the jurisdiction of circuit and district courts or venue of actions therein...." (Emphasis added.) This proviso, they contended, prohibits this Court from applying Rule 82(c) in the manner urged by the petitioners. More specifically, they argued that to allow the action to proceed in Covington County on the authority of Rule 82(c) would "change the law of venue as it has existed in this state for many years." Such a result, they proposed, is prohibited by § 6.11.
We have not heretofore addressed the relationship between the venue rule at issue in this case and Rule 82(c). Contrary to the *1164 arguments of Martin and Auburn University, Ex parte Neely is not controlling authority. In that case, we declined to issue a writ of mandamus directing the Madison County Circuit Court to vacate an order transferring to Montgomery County an action commenced against the State of Alabama and the commissioner of the Department of Conservation and Natural Resources. Although that case created an opportunity for a resolution of this issue, the petitioner did not invoke Rule 82(c). Consequently, we did not consider the relationship between Rule 82(c) and the venue of actions against state agencies and officials. Ex parte Neely is, therefore, inapposite here.
Also, the oral arguments of Martin and Auburn University misperceive or disregard the history of the principle embodied in Rule 82(c). To illustrate, we shall briefly review the historical background of that principle.
The general venue provision for actions against individuals contained in Ala.Code 1975, § 6-3-2, was first codified in the Code of 1852, which provided in pertinent part: "No freeholder of this state, having a permanent residence within it, must be sued out of the county of his residence, unless the suit be for the recovery of real property ..., when the suit must be instituted in the county where the land lies." Ala.Code 1852, § 2164. Notwithstanding the apparent restrictiveness of this section, the preceding adjacent section provided:
"When any joint or joint and several cause of action exists, and the defendants reside or may be found in different counties, a summons may issue from the court having jurisdiction of any one of such defendants, and be executed in any county, which must be returned and filed in the court from which the process issued, and constitute but one suit, in the same manner as if but one summons had issued against all the defendants: and it is the duty of the clerk, on issuing such branch summons, to indorse thereon that it is a branch of the original suit, and that all the summons constitute one suit and are for one and the same cause of action."
Ala.Code 1852, § 2163 (emphasis added). This provision authorizing a "branch summons" in an action in one county to a joint defendant residing in another county, notwithstanding its facial inconsistency with § 2164, was codified in successive statutory compilations without significant change, until 1886, when, still without significant change, it was accompanied by a more recent predecessor of § 6-3-2 in significantly altered form. That section provided in pertinent part:
"All actions on contracts ... must be brought in the county in which the defendant, or one of the defendants, resides, if such defendant has within the state a permanent residence; all other personal actions, if the defendant, or one of the defendants, has within the state a permanent residence, may be brought in the county of such residence, or in the county in which the act or omission complained of may have been done, or may have occurred."
Ala.Code 1886, § 2640 (emphasis added). The emphasized portions of this section, which authorized the commencement of an action against joint defendants in such county as would be proper for an action against any one of them, obviated any conflict with the branch summons provision.
Both provisions appeared without significant change in the Code of 1896, as § 3271 and § 4205, respectively. Those sections formed the basis of a decision in Eagle Iron Co. v. Baugh, 147 Ala. 613, 617, 41 So. 663, 664 (1906). That case involved an action by Baugh commenced in Marshall County against a Marshall County resident individual, and Eagle Iron Company ("Eagle Iron"), a corporation, as joint defendants. 147 Ala. at 614, 41 So. at 664. As a corporation, Eagle Iron was subject to being sued "in any county in which it [did] business by agent." Ala.Code 1896, § 4207. It was, however, operating in Etowah County and "had no place of business" in Marshall County. 147 Ala. at 614, 41 So. at 663.
The individual defendant was eventually dismissed from the action and, subsequently, Eagle Iron challenged venue through a plea in abatement. Id. Holding that the plea should have been allowed, this Court explained:
"While rule 12 (page 1197 of the code of 1896) requires that pleas in abatement *1165 must be filed within the time allowed for pleadings, and ordinarily such a plea should not be entertained at a subsequent term of court, yet the plea should have been permitted in the case at bar. The corporation was sued jointly with [an individual], and in Marshall county, where [the individual] resided, and under sections 4205 [the general venue statute as to individuals] and 3271 [the branch summons statute] the question of venue was not open to the Eagle Iron Company so long as [it was a] joint defendant; but, after the plaintiff eliminated [the individual joint defendant] from the suit, the corporation became the sole defendant, and had the right to then question the venue of the action. Section 4207 applies to suits against corporations when they are sole defendants, and does not conflict with sections 4205 and 3271 in reference to suits against two or more defendants."
147 Ala. at 616-17, 41 So. at 664 (emphasis added).
The pertinent clauses of § 3271 and § 4205harmonized as to the venue of actions involving joint defendants by the Code of 1886remained without relevant change a part of Alabama's statutory compilations until this Court promulgated the Rules of Civil Procedure. See Ala.Code 1907, §§ 6110 and 5300 (branch summons); Ala.Code 1923, §§ 10467 and 9418 (branch summons); Ala. Code 1940, Tit. 7, §§ 54 and 185 (branch summons); Ala.Code 1958 (Recompiled), Tit. 7, §§ 54 and 185 (branch summons). Throughout that period, moreover, this Court continued to construe those clauses in a manner consistent with its holding in Eagle Iron Co. supra, namely, that a venue that is a proper venue as to one defendant is a proper venue for joint defendants, regardless of the residence of the joint defendants. See, e.g., Ex parte Western Ry. of Alabama, 283 Ala. 6, 214 So.2d 284 (1968) (Jefferson County was the proper forum for an action commenced against a domestic corporation, which was not doing business in Jefferson County, where a joint defendant in the action was a foreign corporation that was doing business in Jefferson County, as long as the foreign corporation remained in the action); National Surety Co. v. First National Bank of Opelika, 225 Ala. 108, 142 So. 414 (1932) (Lee County was the proper forum for a joint action commenced against a foreign corporation doing business in Lee County and an individual residing in Tallapoosa County); Louisville & N.R.R. v. Strickland, 219 Ala. 581, 122 So. 693 (1929) (Wilcox County was the proper forum for an action commenced against a domestic corporation that was not doing business in Wilcox County, where a joint defendant was a foreign corporation that was doing business in Wilcox County).
The pertinent language of the general venue provision discussed above is, of course, still found in Ala.Code 1975, § 6-3-2(a), which provides in part:
"(2) All actions on contracts ... must be commenced in the county in which the defendant or one of the defendants resides....
"(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission ... occurred."
(Emphasis added.) The branch summons statute, along with other provisions regulating the mode and procedures for commencing actions, has now been subsumed in the Rules of Civil Procedure promulgated by this Court in 1973. More specifically, its pertinent venue principle is now most succinctly expressed in Rule 82(c), as we stated in Roland Pugh Mining Co. v. Smith, 388 So.2d 977, 979 (Ala.1980): "Rule 82(c) ... simply restates the statutes as heretofore construed by this Court in providing: Where several claims or parties have been joined, the suit may be brought in any county in which any one of the claims could properly have been brought." Otherwise stated, the principle expressed in Rule 82(c) is consistent with the principle expressed repeatedly by the legislature since 1852, which principle is still legislatively mandated by § 6-3-2(a)(2)-(3). Contrary, therefore, to the arguments of Martin and Auburn University, Rule 82(c) merely preserves the principle expressedboth formerly and currentlyby the legislature.
*1166 Recently, we held that Ala.Code 1975, § 6-3-11 abrogated this principle in cases involving actions against counties and municipalities. See Ex parte Alabama Power Co., 640 So.2d 921 (Ala.1994). However, neither § 6-3-11 nor any other statute prohibits the application of this principle in actions against state agencies or officials. In short, Rule 82(c) has not "affect[ed] the ... venue of actions," as Martin and Auburn University contend. Thus, § 6.11 is no impediment to the recognition of a Rule 82(c) exception to the state-defendant venue rule.
Indeed, this Court has already recognized at least two exceptions to the general rule, namely, where an alternate forum is provided specifically by statute, Boswell v. Citronelle-Mobile Gathering, Inc., 292 Ala. 344, 294 So.2d 428 (1974); or where objections to venue are waived, Ex parte Dothan-Houston County Airport Authority, 282 Ala. 316, 211 So.2d 451 (1968). Moreover, the principle embodied in Rule 82(c)as might be expected, given its longevity in our jurisprudence is based on the soundest of policy considerations. Applied to actions generally, it obviates, for example, the multiplicitous litigation that would otherwise result from severances of actions if every joint defendant were amenable to suit only in his or her own respective forum. These considerations are not inconsequential in actions against state defendants. We hold, therefore, that the joint-defendant venue principle as most succinctlybut not exclusivelyexpressed in Rule 82(c) constitutes another exception to the rule laying venue of actions against state officials and agencies in the county of official residence.

II. Inconvenient Forum
Martin and Auburn University also invite us to hold that the doctrine of forum non conveniens, as set forth in Ala.Code 1975, § 6-3-21.1, requires prosecution of this action in Lee County. They concede, however, that this issue was never addressed nor considered by the trial court, which based its decision, instead, "solely upon" its construction of Ex parte Neely, 653 So.2d 945 (Ala. 1995).[1] We do not, therefore, address this issue. See Ex parte Blount, 665 So.2d 205 (Ala.1995) (refusing to consider forum non conveniens as a ground for denying a mandamus petition, where that ground was never considered by the trial court).
A writ of mandamus will issue where the petitioner has demonstrated "a clear legal right to the relief sought." Ex parte Clark, 643 So.2d 977, 978 (Ala.1994). The petitioners have demonstrated such a right in this case. Therefore, we grant the petition. The Covington County Circuit Court is directed to vacate its order transferring this action to Lee County.
WRIT GRANTED.
HOOPER, C.J., and SHORES, KENNEDY, and BUTTS,[*] JJ., concur.
MADDOX[**] and HOUSTON, JJ., dissent.
MADDOX, Justice (dissenting).
The majority holds "that the joint-defendant venue principle as ... expressed in Rule 82(c) constitutes [an] exception to the rule laying venue of actions against state officials and agencies in the county of official residence." 677 So.2d at 1166. I must respectfully dissent.
In Ex parte Neely, 653 So.2d 945, 947 (Ala.1995), this Court held that, "absent specific statutory authority to the contrary or waiver of objection to venue," the proper venue of an action against a State officer or a State agency is the county of the official residence of the State agency or State officer. In Neely, this Court expressed the public policy considerations behind this rule as being "directed toward preventing inconvenience, hindrance, and delay to the successful conduct of the functions of state government." Id. The trial court in the present case granted the defendants' motion to transfer the action to Lee County, based *1167 solely on this Court's Neely opinion; I believe that the trial correctly relied on Neely.
The petitioners argue that the trial court's reliance on Neely is misplaced and that Rule 82(c), Ala.R.Civ.P., which states that venue is proper against all claims if one of the claims is properly brought in a proper venue, is "specific statutory authority to the contrary." They further argue that the defendant Martin was sued in his individual capacity for fraud, and that the fraud complained of occurred in Covington County; they say, therefore, that § 6-3-2(a)(3), Ala.Code 1975, allows them to sue in Covington County, where the alleged tortious act occurred.[***] The petitioners argue that because venue is proper in Covington County on the fraud claim against Martin, in his individual capacity, venue is, therefore, proper in Covington County for all of their claims, citing Rule 82(c), Ala.R.Civ.P. They further contend that Rule 82(c) applies to a State agency or State officer, because Rule 1(a), which relates to the scope of the Alabama Rules of Civil Procedure, states that the Rules shall apply to "those [civil actions] in which the State of Alabama or a political subdivision thereof is a party." Rule 1(a), Ala.R.Civ.P.
The majority agrees with the petitioners, but attempts to circumvent the clear mandate of Neely by holding that the "joint-defendant exception" to Neely is expressed elsewhere, not exclusively in Rule 82(c). Based on my review of the relevant statutes, I do not find "specific statutory authority" supporting this new principle that the Court today adopts, and the Court does not cite any; such authority is required by the Neely decision. The Court, therefore, modifies or overrules the previous holdings in which it has stated that the proper venue for an action against a State agency or officer must be in the county of that agency or officer's official residence, regardless of the fact that the alleged injury did not occur there.
That the Court has departed from past precedent is demonstrated by the fact that it has adopted the petitioners' argument on the issue. As I understand their argument, they say that this Court, when adopting the Rules of Civil Procedure, intended to make the State and its agencies subject to all the Rules of Civil Procedure, including the venue provisions found in Rule 82(c).
This Court has absolutely no power to establish venue, either by Court rule or Court decision; and to ground its holding in this case upon an interpretation of Rule 82, in my opinion, establishes a dangerous precedent. The Alabama Rules of Civil Procedure are procedural rules and were adopted solely for the purpose of ensuring efficiency and uniformity in litigation.[] No rule of procedure and no decision of this Court can abridge, enlarge, or modify any substantive right of a party. That principle is clear from a reading of both the Constitution of Alabama and the applicable statutes. Amendment 328, Constitution of Alabama, 1901, § 6.11, states:

*1168 "The supreme court shall make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, however, that such rules shall not abridge, enlarge or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided, further, that the right of trial by jury as at common law and declared by section 11 of the Constitution of Alabama 1901 shall be preserved to the parties inviolate. These rules may be changed by a general act of statewide application."
(Emphasis added.) Section 12-2-7, Ala.Code 1975, provides:
"The Supreme Court shall have authority:
"(4) To make and promulgate rules governing the administration of all courts and rules governing practice and procedure in all courts; provided, that such rules shall not abridge, enlarge, or modify the substantive right of any party nor affect the jurisdiction of circuit and district courts or venue of actions therein; and provided further, that the right of trial by jury as at common law and declared by Section 11 of the Constitution of Alabama of 1901 shall be preserved to the parties inviolate."
(Emphasis added.) It is clear from a reading of these constitutional and statutory provisions that the people have specifically provided that this Court has no power to affect the venue of actions in the circuit or district courts.
I recognize, of course, that no statutory provision specifically states that venue of actions against State officers is proper only in the county of their official residence, but the majority has not found any statute that supports its position either. I know that the statutes cited by the majority do not specifically state that a State officer or agency may be sued anywhere other than in the county of the officer or agency's official residence. In fact, the statutes cited by the majority are silent in this regard and do not support the majority's contentions. On numerous occasions, this Court has held that venue for an action against a State agency or a State officer is proper only in the county of the official residence of the agency or officer. See, Ex parte Neely, 653 So.2d 945 (Ala. 1995); Ex parte Alabama Power Co., 640 So.2d 921 (Ala.1994); Ex parte City of Birmingham, 507 So.2d 471 (Ala.1987); Alabama Youth Services Board v. Ellis, 350 So.2d 405 (Ala.1977); Boswell v. Citronelle-Mobile Gathering, Inc., 292 Ala. 344, 294 So.2d 428 (1974); Tri-State Corp. v. State ex rel. Gallion, 272 Ala. 41, 128 So.2d 505 (1961).
I have specifically examined the provisions of § 6-3-1 et seq., Ala.Code 1975, which pertain to the proper venue for actions brought in State courts, and I find no provision that specifically addresses the issue of the proper venue when a State agency or official is a defendant in a civil action. I did find that the legislature, shortly after this Court decided Ex parte City of Birmingham, 507 So.2d 471 (Ala.1987), adopted an act to address the problem presented in that case, in which a city was sued in a county other than the county in which it was situated. See, Ala.Acts 1987, No. 87-391.[] Those acts, now codified as § 6-3-11, Ala.Code 1975, established the proper venue for all civil actions for damages for personal injury, death, or property damage filed against a county or a municipality as being the county where the city or county was located or in the county where the act or omission complained of occurred. Through this statute, the legislature extended the scope of our holding in Ex parte City of Birmingham, in which this Court announced that counties and municipalities should be given the same common law protection that had traditionally been given to State agencies and officers. Applying common law venue principles to that case, this Court held that the only proper venue for an action against a county or municipality was the county where that governmental entity was located. Ex parte City of Birmingham, 507 So.2d at 474. Apparently, the legislature disagreed with this holding *1169 and chose to allow venue for actions against these entities to be proper also in the county where the act or omission complained of occurred; however, I cannot conclude from this action that the legislature intended to expand that venue principle to include entities and officers of the State.
I can interpret the adoption of § 6-3-11 only as suggesting that the legislature intended only to alter the common law rule establishing proper venue for governmental agencies in relation to counties and municipalities, and did not intend to alter the rule as to State entities and officers. If the legislature had intended to expand this rule in relation to all State agencies, then the proper time for it to do so would have been when it was adopting § 6-3-11, since the statute could have provided for specific venue rules applicable to all governmental agencies. The fact that the legislature did not include in this statute the agencies or officers of the State leads to the inference that the legislature intended only to change the common law rule as it related to cities and counties, and that entities and officers of the State would be governed by the common law as interpreted by court decision. In order to get a better understanding of the legislative intent in adopting Act No. 87-391, I have examined the House and Senate Journals that record the passage of Act 87-391 (§ 6-3-11) through the legislature. This examination revealed no indication that the legislature, while addressing the question of venue of actions against counties and municipalities, sought to address the venue of actions against State agencies or their officers or agents. Consequently, I believe that the rule relating to venue of actions when a State agency or officer is a defendant, as it existed at the time of the adoption of Amendment 328, still applies and accurately reflects the legislative intent concerning the proper venue for actions against State defendants. See, Tri-State Corp. v. State ex rel. Gallion, 272 Ala. 41, 128 So.2d 505 (1961).
To allow a plaintiff to avoid application of the Neely rule by merely joining a defendant in his or her individual capacity will effectively destroy the protection provided to the State and its officers by the rule. The provision of Rule 82(c) cannot expand venue for actions against State agencies or officers, and the majority's holding seems to violate the very public policy set forth by the Court in Neely; I think it will cause the State and its officers great "inconvenience, hindrance, and delay" in their performance of governmental activities. State agencies and officers will now be required to travel throughout the State to defend actions in counties other than the counties of their official residence. As a result, the State must suffer the costs and inconvenience of being subject to being sued in any county. Additional funds will be necessary to finance the resulting increase in costs to travel throughout the State to defend lawsuits, the costs of hiring new attorneys, who will be necessary to supplement the attorney general's civil litigation staff, and the increased cost to the individual State employee, who will be subject to being sued in any county in the State.
There is another reason why I must dissent. The writ of mandamus is an extraordinary remedy, and one seeking it must show "(1) a clear legal right ... to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Alfab, Inc., 586 So.2d 889 (Ala.1991). It is well settled that "[i]n cases involving the exercise of discretion by a lower court, a writ of mandamus may issue to compel the exercise of that discretion; however, it may not issue to control the exercise of discretion except in a case of abuse." Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990) (emphasis added).
Based on the foregoing, I am of the opinion that these petitioners, like those in Ex parte Neely, have not shown "a clear legal right" to have the trial court's transfer vacated. Accordingly, I must respectfully dissent; I believe that the petitioners' request for mandamus relief is due to be denied.
HOUSTON, J., concurs.
NOTES
[1] As we noted previously in this opinion, Ex parte Neely is inapposite.
[*] Justice Butts did not attend oral argument, but he listened to the tape on December 15, 1995.
[**] Justice Maddox did not attend oral argument, but he listened to the tape on March 6, 1996.
[***] Section 6-3-2 states:

"(a) In proceedings of a legal nature against individuals:
". . . .
"(3) All other personal actions, if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred."
"All other personal actions" are those not based on a claim for recovery of land or claims based in contract. See, § 6-3-2(a), Ala.Code 1975.
[] The necessity for this Court's power to promulgate these procedural rules was discussed by this Court in Ex parte Ward, 540 So.2d 1350, 1351 (Ala.1988):

"The reason for our rulemaking authority is the critical necessity of implementing and maintaining a procedural system whereby justice is administered fairly, uniformly, effectively, and expeditiously. Cf. Rule 1, Ala.R.Civ.P. If we were without such authority to serve as the central body charged with promulgating rules effective statewide, the bench and bar alike would undoubtedly be faced with a haphazard crazy-quilt of varying procedures from one circuit to the next. Although the lower courts are left to fashion some rules of practice or procedure for themselves, see, e.g., Ala. R.Civ.P. 83(a), even these rules are subject to our approval. [Rule 83 was amended effective April 14, 1992, so as to abolish all such local rules.]"
The Court goes on in Ward to discuss the specific limitations placed on this Court by Amend. 328, § 6.11, of the state Constitution. See Ex parte Ward, 540 So.2d at 1351-52.
[] Act No. 87-391 was passed on July 14, 1987, approximately four months after we announced our decision in Ex parte City of Birmingham.