MOORE, Judge.
*906 In case no. 2160876, the Alabama Surface Mining Commission ("the Commission") petitions this court for a writ of mandamus directing the Jefferson Circuit Court to dismiss the appeal filed by John T. Crane, Dan Jett, and Linda Jett ("the property owners") challenging the Commission's issuance of a surface-coal-mining permit to Black Warrior Minerals, Inc. ("Black Warrior"); alternatively, the Commission requests that this court direct the Jefferson Circuit Court to transfer the appeal to the Walker Circuit Court. In case no. 2160887, Black Warrior requests the same relief. We deny both petitions.
Procedural History
On March 31, 2016, the Commission issued Black Warrior a surface-coal-mining permit, permit no. P-3987 ("the permit"). The property owners appealed the issuance of the permit to the Commission's Division of Hearings and Appeals; the issuance of the permit was affirmed on November 8, 2016. On December 2, 2016, the property owners filed, pursuant to § 9-16-79(1)d., Ala. Code 1975, a part of "The Alabama Surface Mining Control and Reclamation Act of 1981" ("the Alabama Act"), § 9-16-70 et seq., Ala. Code 1975, a petition for review of the hearing officer's decision. The Commission took no action on the petition within 30 days of its filing, and, thus, the petition was deemed denied. See § 9-16-79(3)a., Ala. Code 1975.
On January 30, 2017, the property owners appealed to the Jefferson Circuit Court. On March 2, 2017, the Commission and Black Warrior filed motions to dismiss or, alternatively, to transfer the appeal to the Walker Circuit Court. All the parties briefed the issue whether the Walker Circuit Court or the Jefferson Circuit Court is the proper court to hear the appeal. On June 28, 2017, the Jefferson Circuit Court denied the motions filed by the Commission and Black Warrior. On August 9, 2017, the Commission and Black Warrior filed their respective petitions with this court.
Standard of Review
" ' "The proper method for obtaining review of a denial of a motion for a change of venue in a civil action is to petition for the writ of mandamus. Lawler Mobile Homes, Inc. v. Tarver, 492 So.2d 297, 302 (Ala. 1986). 'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). 'When we consider a mandamus petition relating to a venue ruling, our scope of review is to determine if the trial court [exceeded] its discretion, i.e., whether it exercised its discretion in an arbitrary and capricious manner.' Id. Our review is further limited to those facts that were before the trial court. Ex parte American Resources Ins. Co., 663 So.2d 932, 936 (Ala. 1995)." '
*907 " Ex parte Southeast Alabama Timber Harvesting, LLC, 94 So.3d 371, 373 (Ala. 2012) (quoting Ex parte National Sec. Ins. Co., 727 So.2d 788, 789 (Ala. 1998) )."
Ex parte Tier 1 Trucking, LLC, 222 So.3d 1107, 1110 (Ala. 2016).
Discussion
"The Surface Mining [Control and Reclamation] Act [of 1977] is a comprehensive statute designed to 'establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations.' § 102(a), 30 U.S.C. § 1202(a) (1976 ed., Supp. III). Title II of the Act, 30 U.S.C. § 1211 (1976 ed., Supp. III), creates the Office of Surface Mining Reclamation and Enforcement (OSM), within the Department of the Interior, and the Secretary of the Interior (Secretary) acting through OSM, is charged with primary responsibility for administering and implementing the Act by promulgating regulations and enforcing its provisions. § 201(c), 30 U.S.C. § 1211(c) (1976 ed., Supp. III)....
"....
"Section 501(b), 30 U.S.C. § 1251(b) (1976 ed., Supp. III), directs the Secretary to promulgate regulations establishing a permanent regulatory program incorporating all the Act's performance standards. The Secretary published the permanent regulations on March 13, 1979, see 44 Fed. Reg. 14902, but these regulations do not become effective in a particular State until either a permanent state program, submitted and approved in accordance with § 503 of the Act, or a permanent federal program for the State, adopted in accordance with § 504, is implemented.
"Under § 503, any State wishing to assume permanent regulatory authority over the surface coal mining operations on 'non-Federal lands' within its borders must submit a proposed permanent program to the Secretary for his approval. The proposed program must demonstrate that the state legislature has enacted laws implementing the environmental protection standards established by the Act and accompanying regulations, and that the State has the administrative and technical ability to enforce these standards. 30 U.S.C. § 1253 (1976 ed., Supp. III). The Secretary must approve or disapprove each such proposed program in accordance with time schedules and procedures established by §§ 503(b)(c), 30 U.S.C. §§ 1253(b), (c) (1976 ed., Supp. III)."
Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 268-72, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (footnotes omitted).
The State of Alabama enacted the Alabama Act in order "to implement and enforce [the federal Surface Mining Control and Reclamation Act of 1977], and the permanent regulations promulgated thereunder, as required for the state to retain exclusive jurisdiction over the regulation of surface coal mining and reclamation operations." § 9-16-71(b), Ala. Code 1975.
In 2015, § 9-16-79(4)b., a part of the Alabama Act, was amended by Act No. 2015-383, Ala. Acts 2015, to provide for judicial review of a final decision of the Commission "in the circuit court of the county in which the commission maintains its principal office." Because the Commission maintains its principal office in Walker County, according to § 9-16-79(4)b. the appeal would lie in the Walker Circuit Court, not the Jefferson Circuit Court. Before the 2015 amendment to § 9-16-79(4)b., judicial review was proper in the Jefferson Circuit Court pursuant to § 41-22-20(b), Ala. Code 1975.
*908 Ex parte Water Works Bd. of Birmingham, 177 So.3d 1167, 1173 (Ala. 2014).
Section 732.17(g), 30 C.F.R., provides:
"Whenever changes to laws or regulations that make up the approved State program are proposed by the State, the State shall immediately submit the proposed changes to the Director as an amendment. No such change to laws or regulations shall take effect for purposes of a State program until approved as an amendment."
"Director" is defined in 30 C.F.R. § 700.5 as "the Director, Office of Surface Mining Reclamation and Enforcement, or the Director's representative."
At the time the property owners' appeal to the Jefferson Circuit Court was commenced on January 30, 2017, the 2015 amendment to § 9-16-79(4)b. had been submitted for approval by the Director, but it had not yet been approved. Therefore, the property owners argue that § 9-16-79(4)b., as amended, was not yet in effect and, therefore, that the Jefferson Circuit Court was the proper court in which to file their appeal.
In their petitions for a writ of mandamus, the Commission and Black Warrior argue that matters of judicial review are not part of the "approved State program" and, therefore, that no approval of the amendment to § 9-16-79(4)b. was required.[1]
Section 1291(25), 30 U.S.C., defines "State program" as "a program established by a State pursuant to section 1253 of this title to regulate surface coal mining and reclamation operations, on lands within such State in accord with the requirements of this chapter and regulations issued by the Secretary [of the Interior] pursuant to this chapter."
Section 732.15, 30 C.F.R., provides:
"The Secretary [of the Interior] shall not approve a State program unless, on the basis of information contained in the program submission, comments, testimony and written presentations at the public hearings, and other relevant information, the Secretary finds that-
"....
"(b) The State regulatory authority has the authority under State laws and regulations pertaining to coal exploration and surface coal mining and reclamation operations and the State program includes provisions to-
"....
"(15) Provide for judicial review of State program actions in accordance with State law, as provided in section 526(e) of the [Surface Mining Control and Reclamation Act of 1977], except that judicial review of State enforcement actions shall be in accordance with section 526 of the Act. Judicial review in accordance with State law shall not be construed to limit the operation of the rights established in section 520 of the Act, except as provided in that section."
*909 As noted previously, 30 C.F.R. § 732.17(g) provides that no change to the State program may take effect until that change is approved by the Director. Because the regulations specify that the approval of state programs by the Secretary of the Interior includes the manner of judicial review provided by those programs, we cannot agree with the Commission and Black Warrior that the amendment to § 9-16-79(4)b. is not a part of the state program so as to be exempt from the approval requirement.
The Commission and Black Warrior cite In re Permanent Surface Mining Regulation Litigation, 653 F.2d 514 (D.C. Cir. 1981), in support of their arguments. In that case, the United States Court of Appeals for the District of Columbia Circuit stated: "Administrative and judicial appeals of permit decisions are matters of state jurisdiction in which the Secretary [of the Interior] plays no role." 653 F.2d at 519. The context of that statement indicates that the Court of Appeals recognized that the state, not the Secretary of the Interior, is responsible for actually administering the approved state program, including judicial review. We cannot conclude that the decision in Permanent Surface was attempting to assert that the Secretary of the Interior lacked the authority to approve the judicial-review component of a state program prior to the state's administering that program.
The Commission and Black Warrior also cite Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Kempthorne, 497 F.3d 337 (3d Cir. 2007), in support of their position that approval was not required for the amendment to § 9-16-79(4)b. to be effective. In Kempthorne, the Pennsylvania Federation of Sportsmen's Clubs argued that 30 C.F.R. § 732.17(g) required that Pennsylvania obtain approval to dissolve its alternative bond system in favor of a conventional bond system. However, the United States Court of Appeals for the Third Circuit noted that Pennsylvania's state program included the option to implement either type of bond system. That case is unlike the case before us, however, because Alabama's state program did not provide the option to provide for alternative courts to provide judicial review.
In conclusion, we hold that the amendment to § 9-16-79(4)b. is a change to the law that comprises Alabama's "approved State program" within the meaning of 30 C.F.R. § 732.17(g), and, therefore, that amendment was of no effect until the approval required by § 732.17(g) was obtained. Therefore, the Jefferson Circuit Court correctly denied the Commission's and Black Warrior's motions to dismiss or, alternatively, to change venue. Because the Commission and Black Warrior have failed to show a clear legal right to the relief requested, we deny their petitions for a writ of mandamus.[2]
2160876-PETITION DENIED.
2160887-PETITION DENIED.
Thomas, J., concurs.
Donaldson, J., concurs in the result, without writing.
Thompson, P.J., dissents, with writing, which Pittman, J., joins.
I do not believe that federal law requires the United States Secretary of the Interior ("the secretary") or an agent of the secretary *910 to approve Alabama's 2015 amendment to § 9-16-79(4)b., Ala. Code 1975 ("the amendment"). The amendment provides that venue in cases seeking judicial review of decisions of the Alabama Surface Mining Commission ("the commission") is in the circuit court of the county in which the commission maintains its principal office, i.e., Walker County.
The main opinion concludes that the secretary or an agent of the secretary must approve the amendment before it can become effective. Before the amendment, venue would have been proper in Jefferson County, the location of the mining operation subject to the permit at issue. Because the amendment had not received federal approval at the time judicial review was initiated in Jefferson County, the main opinion reasons, venue remains proper in Jefferson County, and, therefore, it denies the petitions for a writ of mandamus filed by the commission and Black Warrior Minerals, Inc. ("Black Warrior").
The commission and Black Warrior rely on In re Permanent Surface Mining Regulation Litigation, 653 F.2d 514 (D.C. Cir. 1981), to support their position that the secretary or an agent of the secretary is not required to approve the amendment for it to be effective in Alabama. In that case, the United States Court of Appeals for the District of Columbia Circuit explained the relationship between the federal Surface Mining Control and Reclamation Act of 1977 ("the Act") and the states' regulatory schemes involving surface mining, writing:
"Congress chose a special kind of regulatory structure for the Surface Mining [Control and Reclamation] Act [of 1977], in which the federal government shares administrative responsibility with the states. Rather than reposing all decisionmaking power with the Secretary of the Interior, Congress afforded the states an opportunity to propose regulatory programs of their own, conforming to the requirements of the Act and to regulations promulgated by the Secretary. Under a state program, the state makes decisions applying the national requirements of the Act to the particular local conditions of the state. The Secretary is initially to decide whether the proposed state program is capable of carrying out the provisions of the Act, but is not directly involved in local decisionmaking after the program has been approved.
"....
"In an approved and properly enforced state program, the state has the primary responsibility for achieving the purposes of the Act. First, the state is the sole issuer of permits. In performing this centrally important duty, the state regulatory authority decides who will mine in what areas, how long they may conduct mining operations, and under what conditions the operations will take place. See Act §§ 506, 510. It decides whether a permittee's techniques for avoiding environmental degradation are sufficient and whether the proposed reclamation plan is acceptable. Act § 510(b). The state sets the amount of the bond to be posted by the operator, and inspects the mine to determine compliance. Act §§ 509, 517. When permit conditions are violated, the state is charged with imposing appropriate penalties. Act § 518(I).
"Finally, it is with an approved state law and with state regulations consistent with the Secretary's that surface mine operators must comply. See Act § 503(a), 518(I). Administrative and judicial appeals of permit decisions are matters of state jurisdiction in which the Secretary plays no role. Act § 514.7 *911 "As long as the state properly enforces its approved program, it is the exclusive 'on the scene' regulatory authority. It is, essentially, the entity that applies the general standards of the Act to the particular geographical and geological circumstances of the state. Congress cited the flexibility achieved in this allocation of regulatory functions as its reason for leaving 'primary governmental responsibility' with the states. Act § 101(f)."
Id. at 518-19 (footnotes omitted; emphasis added).
After quoting the emphasized sentence set forth above, the main opinion states that "[w]e cannot conclude that the decision in Permanent Surface was attempting to assert that the Secretary of the Interior lacked the authority to approve the judicial-review component of a state program prior to the state's administering the program." 254 So. 3d at 909. However, my research has revealed no authority that would support the main opinion's conclusion. To the contrary, other statutes and regulations would indicate that the secretary is not required to approve state procedural rules and laws regarding such matters as deciding venue to judicially review a decision regarding a permit challenge.
Although the statement, "[a]dministrative and judicial appeals of permit decisions are matters of state jurisdiction in which the Secretary plays no role," Permanent Surface, 653 F.2d at 519, is dictum, in my opinion, it indicates an intention for the secretary to leave matters such as the venue of judicial review of a decision regarding a permit challenge to the states. The Act itself provides that
"[a]ction of the State regulatory authority pursuant to an approved State program shall be subject to judicial review by a court of competent jurisdiction in accordance with State law, but the availability of such review shall not be construed to limit the operation of the rights established in section 1270 of this title except as provided therein."
30 U.S.C. § 1276(e) (emphasis added).
Regulations governing the Act also appear to allow states to follow their own rules of court procedure when conducting a judicial review of the grant or denial of a permit. For example, 30 C.F.R. § 732.17 provides, in part:
"(a) This section applies to any alteration of an approved State program whether accomplished on the initiative of the State regulatory authority or the Director [of the Office of Surface Mining Reclamation and Enforcement]. Such alterations are referred to in this section as 'amendments.'
"(b) The State regulatory authority shall promptly notify the Director, in writing, of any significant events or proposed changes which affect the implementation, administration or enforcement of the approved State program. At a minimum, notification shall be required for-
"(1) Changes in the provisions, scope or objectives of the State program;
"(2) Changes in the authority of the regulatory authority to implement, administer or enforce the approved program;
"(3) Changes in the State law and regulations from those contained in the approved State program;
"(4) Significant changes in staffing and resources of the regulatory authority and divisions or departments of other agencies with duties in the approved program;
"(5) Changes in agreements between the regulatory authority and *912 other agencies which have duties in the approved program;
"(6) Significant changes in funding or budgeting relative to the approved program; and
"(7) Significant changes in the number or size of coal exploration or surface coal mining and reclamation operations in the State."
30 C.F.R. § 732.17(a) and (b).
"Whenever changes to laws or regulations that make up the approved State program are proposed by the State, the State shall immediately submit the proposed changes to the Director as an amendment. No such change to laws or regulations shall take effect for purposes of a State program until approved as an amendment."
30 C.F.R. § 732.17(g). The regulations suggest that the role of the secretary or an agent of the secretary is to approve the requirements developed for use in the state programs that are unique to the Act, such as the conditions pursuant to which permits are required, the prerequisites that must be met in applying for permits, the issuance of permits, and similar considerations. Again, in my opinion, venue of an action for the judicial review of the granting or denial of a permit is not of the same type as the actions that require the approval of the secretary or an agent of the secretary.
Because I do not think the approval of the secretary or an agent of the secretary is required for the amendment to be effective, I also believe that the commission and Black Warrior have demonstrated a clear legal right to change the venue of the judicial review of the decision granting the permit to Walker County. Thus, I would grant the petitions and direct the Jefferson Circuit Court to vacate its order denying the motions to change venue and to enter an order transferring the matter to the Walker Circuit Court, pursuant to § 9-16-79(4)b.
Pittman, J., concurs.

The property owners argue that this court lacks jurisdiction to determine this issue because, they assert, the Commission and Black Warrior's argument amounts to an attack on the applicable federal regulations and, they note, "any action which is tantamount to an attack on a federal regulation" must be heard by the United States Court of Appeals for the District of Columbia Circuit. See Commonwealth of Virginia ex rel. Virginia Dep't of Conservation & Econ. Dev. v. Watt, 741 F.2d 37, 40 (4th Cir. 1984) (citing Tug Valley Recovery Ctr. v. Watt, 703 F.2d 796 (4th Cir. 1983), and 30 U.S.C. § 1276(a)(1) ). However, unlike the decisions of the United States Court of Appeals for the Fourth Circuit cited by the property owners, this court is not asked to examine the merits of federal regulations; rather, this court is merely applying those regulations to the case before us.

In light of our denial of the petitions, we pretermit discussion of the property owners' argument that the Commission and Black Warrior are estopped from presenting their arguments.